# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 13, 2007 Session

## ROBERT H. CRAWFORD, SR. ET AL. v. J. AVERY BRYAN FUNERAL HOME, INC. ET AL.

### Appeal from the Circuit Court for Hamilton County
### No. 03C349     W. Neil Thomas, III, Judge

---

### No. E2006-00987-COA-R3-CV     Filed November 21, 2007

---

Charles D. Susano, Jr., J., concurring in part and dissenting in part.

The defendants' filings in this case clearly establish that Teri Crawford does not have a cause of action for intentional interference with the dead body of her brother, Robert H. Crawford. That cause of action belonged to Mr. Crawford's widow, to the exclusion of all others. Furthermore, in my opinion, the record before us negates Ms. Crawford's alleged causes of action against all defendants *except* those asserted against the individuals and entities directly associated with the operation of the Tri-State Crematory (hereinafter sometimes referred to as "the Tri-State Defendants"). As to these latter individuals and entities, I believe the defendants' filings fail to negate Ms. Crawford's three causes of action for (1) intentional, (2) reckless, and (3) negligent infliction of mental distress. Therefore, I disagree with the majority's conclusion that the trial court was correct in dismissing Ms. Crawford's complaint with respect to these "infliction of mental distress" theories.

As particularly pertinent to my separate opinion, the complaint contains the following allegations:

\* \* \*

1. This action arises from the mishandling, abuse and desecration of the bodies of the deceased loved ones of hundreds of citizens of Tennessee, Georgia, Alabama and other states. . . .

\* \* \*

5. . . . [Teri] Crawford is the surviving sister of Robert H. Crawford, Jr. [, one of the decedents whose remains were to be cremated by Tri-State Crematory]. . . .

* * *

11. . . . [Ray Marsh, Clara Marsh, T. Ray Brent Marsh and Rhames LeShea March –] the Marsh Defendants [–] conducted business without corporate protection, but as partners, joint venturers and joint proprietors doing business as Tri-State Crematory, Tri-State Crematory, Inc. and/or Marsh Vault & Grave, Inc., and/or Brent's Tents, all of which were not valid corporate entities subsequent to the respective revocations of corporate charters by the State of Georgia as hereinabove set forth, but were merely trade names, fictitious names, or trade styles under which the Marsh Defendants jointly and collectively owned and operated the Tri-State Crematory facility in Noble, Georgia. The Marsh Defendants and Defendant Tri-State Crematory will hereinafter be collectively referred to as [the Tri-State Defendants].

* * *

26. Beginning at a date presently unknown, and continuing through February 15, 2002, [the Tri-State Defendants] systematically and commonly mishandled, desecrated, abused and commingled the remains of the decedents in a manner offensive to human sensibilities and/or expressly prohibited by law.

27. [The funeral home] returned what it represented to be the remains of their loved ones to Plaintiffs.

28. The remains returned were not the true remains of Plaintiffs' loved ones or where [sic] not properly cremated remains in conformity to the lawful and professional standard of care for final disposition of human remains, or there remains uncertainty whether the deceased loved on[es were] ever actually cremated.

29. In light of this knowledge, Plaintiffs now know that their loved ones' remains were not cremated in accordance with the wishes of Plaintiffs' or under the terms of the agreement with [the funeral home] but instead were subjected to [the Tri-State Defendants'] unlawful and improper practices.

-2-

30. Plaintiffs have all suffered and continue to suffer the predictable and reasonably foreseeable emotional distress including anguish and grief, upon learning of the treatment to which the remains of their loved-ones were subjected by [the Tri-State Defendants and other defendants].

\* \* \*

33. Throughout [the relevant time period], [the Tri-State Defendants] systematically and commonly mishandled, desecrated, abused, and commingled the remains of the decedents in a manner offensive to human sensibilities and/or expressly prohibited by law.

\* \* \*

EIGHTH CAUSE OF ACTION

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

77. Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

78. The . . . conduct [of the Tri-State Defendants and other defendants] directed toward Plaintiffs, as described herein, was intentional, knowing, and/or reckless. It is so outrageous that it is not tolerated by civilized society.

79. As a direct and proximate result of the . . . conduct [of the Tri-State Defendants and other defendants], Plaintiffs suffered serious mental injuries and emotional distress that no reasonable person could be expected to endure or adequately cope with.

80. In their conduct, the [Tri-State Defendants and other defendants] acted intentionally, knowingly, with suppression, fraud and malice and in reckless and conscious disregard of Plaintiffs' rights. Plaintiffs are, therefore, entitled to punitive and exemplary damages from . . . the [Tri-State Defendants and other defendants] in such amount as shall be necessary and appropriate to punish the [Tri-State Defendants and other defendants] and to deter them and anyone else from ever committing similar indecencies upon human remains.

NINTH CAUSE OF ACTION

81.  Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

82.  At all material times, the [Tri-State Defendants and other defendants] owed a duty to Plaintiffs to act with the ordinary care of a reasonable person with respect to all aspects of the services promised including, but not limited to, all phases of the cremation process, including but not limited to the hiring, retention, training and supervision of all agents, employees and representatives of the [Tri-State Defendants and other defendants], in connection with such services and transactions, the management and administration of the services and transaction, the association with other persons and entities to accomplish the performance of such services, the individual, proper and respectful performance of all steps of the cremation process, and the ascertainment that all such services were being fully and properly undertaken and performed.

83.  The [Tri-State Defendants and other defendants] negligently and carelessly failed to discharge these duties.

84.  As a proximate cause of the . . . negligence [of the Tri-State Defendants and other defendants], Plaintiffs have suffered serious and severe mental injuries and emotional distress that no reasonable person could be expected to endure or adequately cope with.

\*   \*   \*

(Capitalization and underlining in original).  As I understand these allegations, the causes of action being asserted are not premised upon "the interference with a dead body" concept contained in Restatement (Second) of Torts § 868 (1965)[1] and the old case of ***Hill v. Travelers' Ins. Co***., 294 S.W. 1097 (Tenn. 1927), but rather upon the concept of outrageous conduct found in Restatement

---

[1]Comment g. to § 868 recognizes that § 46 *may* have some applicability to cases involving the abuse of a dead body:

> Under the rule stated in § 46 one who by extreme and outrageous conduct intentionally or recklessly inflicts severe emotional distress upon another is subject to liability for the emotional distress.

(Second) of Torts § 46 and other sections of the Restatement (Second) of Torts.[2]  Stated another way, the "right" in "outrageous conduct" cases is the right to be free from the infliction of serious emotional distress, *see* Restatement (Second) of Torts § 46, cmt. b., as opposed to the surviving spouse's right to be free from interference with her exclusive control of the deceased's body.  *See* Restatement (Second) of Torts § 868, cmt. a.

The concept of outrageous conduct was addressed in the relatively recent case of ***Doe v. Roman Catholic Diocese of Nashville***, 154 S.W.3d 22 (Tenn. 2005).  In ***Doe***, victims of child molestation by a former priest brought suit against the Catholic diocese of which the priest previously had been a member.  *Id*. at 24, 28.  The plaintiffs alleged that the diocese had been guilty of reckless conduct in the nature of outrageous acts and omissions that ultimately inflicted emotional harm on the plaintiffs.  *Id*. at 30.  The trial court granted the diocese summary judgment and the Court of Appeals affirmed.  *Id*.  In our opinion, we held "that reckless infliction of emotional distress must be based on conduct that was directed at the plaintiff."  *Id*. at 24.  The Supreme Court disagreed with our conclusion.  It granted permission to appeal and reversed the lower courts.  The High Court stated that ***Doe*** presented a question of first impression.  The Court held that "a claim for reckless infliction of emotional distress need not be based upon conduct that was directed at a specific person or that occurred in the presence of the plaintiff."  *Id*. at 43.  As in ***Doe***, the Tri-State Defendants had no direct contact or relationship with Terry Crawford and the alleged outrageous conduct did not occur in her presence.

In the course of its opinion, the Supreme Court in ***Doe*** stated the requirements for reckless infliction of emotional distress:

> Three elements are required: first, the conduct complained of must have been reckless; second, the conduct must have been so outrageous that it is not tolerated by civilized society; third, the conduct complained of must have caused serious mental injury.  In order to mount a prima facie case, the plaintiff need not allege that the defendant's reckless misconduct has been directed at a specific person or that it had occurred in the plaintiff's presence.

*Id*. at 41 (citation omitted).  The Court in ***Doe*** defined the concept of recklessness thusly:

> Recklessness is a hybrid concept which resembles both negligence and intent, yet which is distinct from both and can be reduced to neither.  "A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result."  Although the reckless actor intends to act or not to act, the reckless actor lacks the "conscious objective or desire" to engage in harmful conduct or to cause a harmful result.  ("[R]ecklessness and

---

[2]*See* Restatement (Second) of Torts §§ 312, 313, 436, and 436A.

negligence are incompatible with desire or intention."); (The reckless actor "does not intentionally harm another, but he intentionally or consciously runs a very serious risk with no good reason to do so."). Nevertheless, recklessness contains an awareness component similar to intentional conduct which is not demanded of negligence. (Recklessness "entails a mental element that is not necessarily required to establish gross negligence."); ("The element of awareness of risk . . . does distinguish between recklessness and negligence."). Further, although recklessness is typically a criterion for determining whether punitive damages are warranted in negligence cases, claims for reckless infliction of emotional distress lack an underlying negligence claim. Therefore, a recklessness analysis is something unique which differs from analyses based strictly on either intent or negligence. Courts requiring the directed-at element generally have failed to recognize and to address the unique qualities of recklessness.

*Id*. at 38. (citations omitted). In my opinion, the concepts embodied in these two quotes from ***Doe*** fit the instant case like a glove.

Based upon the foregoing, I would hold that Teri Crawford has stated in her complaint a cause of action against the Tri-State individuals and entities for reckless infliction of emotional distress. I would also hold that the complaint before us is sufficient to state a cause of action against the same defendants for intentional infliction of the same condition. Finally, I believe the plaintiff has sufficiently alleged a cause of action for negligent infliction of emotional distress. I express no opinion as to whether Ms. Crawford can prove the essential elements of any or all of her alleged causes of action.

Accordingly, I concur in part and respectfully dissent in part.

_____
CHARLES D. SUSANO, JR., JUDGE